## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CAROL N. B.,

               Plaintiff,

     v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

               Defendant.

Case No. 22 C 6921

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol N. B. seeks to overturn the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. The Commissioner moves for summary judgment affirming the decision. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Carol applied for DIB on September 3, 2020, alleging that she became disabled on January 1, 2020 due to lupus, bone spurs, joint pain, fevers, fatigue, sensitivity to sun, skin rashes, trouble with bowel and urination, trouble standing, deformities in hands, thyroid issues, and depression. Carol is also obese. Born on April 21, 1980, Carol was 39 years old as of the alleged disability onset date. Carol completed one year of college and graduated from beauty school. She has past work as a hairstylist and last worked in October 2020.

The administrative law judge ("ALJ") issued her decision denying Carol's application on April 22, 2022. (R. 13-34). The ALJ concluded that Carol's degenerative lumbar spondylosis/stenosis, polyarthritis, systemic lupus erythematosus, and obesity were severe

impairments but did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 16, 20-23. The ALJ found Carol's hypothyroidism, rashes, abdominal pain due to gallstones, vitamin D deficiency, anxiety, and depressive disorder to be non-severe. *Id*. at 16-19. Under the "paragraph B" analysis, the ALJ found that Carol had mild limitations in the four functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at 17-19. The ALJ then determined that Carol had the residual functional capacity ("RFC") to perform a reduced range of sedentary work except that she: (1) can never climb ladders, ropes, or scaffolds; (2) can no more than occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; (3) must be provided a sit/stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes; (4) may use her hands no more than frequently for fingering; (5) cannot operate motor vehicles for work purposes; and (6) cannot work outside or be outside for work purposes. *Id*. at 23-32. Given this RFC and the vocational expert's testimony, the ALJ concluded that Carol is unable to perform her past relevant work as a hairstylist, but there are jobs that that exist in significant numbers in the national economy that Carol can perform, including order clerk, telephone clerk, and address clerk. *Id*. at 32-34. As a result, the ALJ found Carol not disabled. *Id*. at 34.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ---, 139 S.Ct. 1148, 1154, (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Carol raises four main arguments. She contends the ALJ: (1) erred in failing to consider the limitations of her severe and non-severe impairments in combination in conducting the RFC assessment, and from there argues that in omitting mental functional limits from the RFC, the ALJ erred; (2) failed to properly evaluate the

treating opinion evidence; (3) erred in finding that she can frequently use her hands for fingering; and (4) improperly discredited her statement regarding her need to lie down or nap during the day. The Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal.

## A.      RFC Assessment

For her first argument, Carol contends that the ALJ erred in failing to consider her non-severe mental impairments in combination with her severe physical impairments, including lupus and musculoskeletal impairments, in crafting her RFC. Specifically, Carol argues that by omitting non-exertional limitations from the RFC, the ALJ did not consider the combined effects of her symptoms of chronic pain and fatigue on her ability to sustain the on-task and attendance requirements of full-time work. Relatedly, Carol argues that after stating at step two that she would provide a more detailed assessment of the paragraph B criteria, the ALJ did not address her deficits in concentration and attention in assessing whether she has the RFC to sustain full-time work.

Carol is correct that "an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Moreover, "[m]ental functional limits found at step two must be considered during the RFC assessment, but those limits will not necessarily become limits within a claimant's RFC." *Rick M. v.* Saul, 2021 WL 2588762, at *6 (N.D. Ill. June 24, 2021). Here, the ALJ expressly recognized her obligation to consider "all of the claimant's impairments, including impairments that are not severe" in determining the claimant's RFC. (R. 15). Thus, the ALJ explained she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing [Carol's] residual functional capacity." *Id.* at 16. At step two, the ALJ specifically found that Carol's mental impairments did not "impos[e] more than mild,

4

*if any*, work-related limitations. . . . While anxiety is noted in the record, *there is no indication of functional limitations*, abnormal behavior, or concerns in this regard. . . . There is no evidence of concern as to the claimant's mental capacity even though she is noted to be anxious at times." *Id.* at 16-17. The ALJ evaluated the paragraph B criteria and determined that Carol had mild limitations in all four functional areas and that her anxiety and depression are non-severe. *Id.* at 17-19. Considering the evidence, the ALJ noted, among other things, that Carol reported difficulty maintaining attention due to flares of her physical impairments. *Id.* at 18. The ALJ further noted that Carol attended a consultative psychological evaluation and was assessed with anxiety and a depressive disorder, but mental status exams had shown intact cognition, orientation, thought processes, attention, concentration, and memory. *Id.* at 16, 18, 19.

In the context of the RFC finding, the ALJ provided a sufficient discussion of the relevant evidence regarding Carol's ability to sustain adequate concentration and attention on a full-time basis. As part of the RFC analysis, the ALJ noted that Carol testified that she takes medication for anxiety but not for depression or a mood disorder. (R. 25). The ALJ also noted that Carol reported that her inflammatory flares affect her memory and concentration. (R. 24). However, earlier in the decision, the ALJ found that Carol had the capacity for concentration to: do some work until October 29, 2020, ten months after her alleged onset date; drive regularly; attend appointments alone and provide and receive information during visits, remember appointment schedules and locations, and follow treatment recommendations; handle finances with some limitations but an ability to count change and shop; tend to personal care and do some household cleaning chores; prepare food; go out alone without becoming lost or confused; use a computer to shop on the internet; read and watch television programs, including science shows; feed her cat on a regular schedule; receive, read, compose, and send texts and emails; do some sewing; and participate in

the hearing and focus, answer questions appropriately, and provide information. *Id*. at 18-19; *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (a court may review an ALJ's "determination in light of elaboration and analysis appearing elsewhere in the decision."); *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). In her RFC analysis, the ALJ also found no evidence that any side effects from medications interfere with Carol's ability to sustain attention and concentration or remain on task. (R. 30). After weighing this evidence together with the medical record of physical impairments, the ALJ found that Carol's limitations were not as severe as she alleged. *Id*. at 25-26. Additionally, the ALJ expressly considered Carol's obesity several times and accounted for how her obesity, in combination with her other impairments, impacted her ability to work. *Id*. at 28-30.

Later in the RFC analysis, the ALJ cited to the opinions of the state agency reviewing psychologists, who explicitly considered Carol's physical and mental impairments in combination. (R. 74, 89). At the initial and reconsideration levels in December 2020 and August 2021, respectively, the state agency psychologists found that Carol's "limitations in functioning appear related to [her] medical/physical condition and any mental impairment would impose no more than mild limitation in functioning and is considered non-severe." *Id*. at 74, 89. Neither reviewing state agency psychologist assessed any non-exertional work restrictions related to Carol's anxiety and depression despite finding mild limitations in the paragraph B criteria. *Id*. at 73-74, 88-89. The ALJ found their opinions persuasive because they were consistent with and supported by the expanded record. *Id*. at 30. Notably, Carol does not challenge the ALJ's reliance on the state agency psychologists' opinions in formulating her RFC.

Furthermore, as discussed in greater detail below, the ALJ found the opinion of Carol's treating rheumatologist, Dr. Corinna Weckerle, that Carol's pain, fatigue, and other symptoms were

severe enough to frequently interfere with the attention and concentration needed to do even simple work tasks not persuasive because Dr. Weckerle did not explain or refer to specific treatment notes in support. (R. 31). The ALJ also discredited Dr. Weckerle's opinion that Carol would need to take unscheduled breaks during an 8-hour workday and would miss more than four work days per month due to "bad days" as it was not explained by Dr. Weckerle. *Id*. Next, the ALJ found Dr. Corinna Weckerle's opinion that Carol would sometimes be unable to work due to severe fatigue not persuasive because the opinion was not supported by reference to specific treatment notes and Carol's only complaint of severe fatigue occurred in July 2021, but this level of fatigue was not seen throughout the record. *Id*. at 32. The ALJ explained that she accounted for Carol's reported fatigue by precluding operating motor vehicles for work purposes as a safety precaution and also limiting her to sedentary work with no more than occasional climbing of ramps or stairs, stooping, crouching, kneeling, and crawling as greater activity could aggravate fatigue. *Id*. In assessing the RFC, the ALJ also considered the treating opinion of Dr. Steven Mayer, who opined that Carol's pain does not markedly impact upon her ability to sustain concentration and attention resulting in frequent failure to complete tasks. *Id*. at 32. The ALJ determined that Dr. Mayer's observation in this regard was consistent with her ability to sustain attention and concentration to attend her appointments alone, handle finances, and drive. *Id*.

Carol highlights the conclusion of the consultative psychological examiner, Jenny Marie Wamsat, Psy.D., from December 2020 to argue that Carol's physical impairments have an impact on her ability to sustain non-exertional functioning. Doc. 14 at 10. Dr. Wamsat concluded that Carol's various medical issues, most notably lupus, appeared to be significantly interfering with her daily functioning. (R. 479). But the ALJ expressly considered that Dr. Wamsat assessed Carol with major depressive disorder and generalized anxiety disorder. *Id*. at 16, 479. Moreover, Dr.

Wamsat did not provide any opinions about Carol's specific functional work limitations that her impairments may have caused. Further, the state agency psychological consultants considered Dr. Wamsat's psychological examination and afforded "significant consideration" to her findings because they provided the most recent mental status examination and evaluation of Carol, but they did not impose any on-task and attendance limitations. *Id*. at 71, 74, 86, 89. Again, Carol does not contest the ALJ's analysis of these opinions, and state agency psychological consultants are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (same). In the end, Carol points to no evidence that the ALJ failed to consider and merely asks the Court to reweigh the evidence to arrive at a different conclusion, which it cannot do. *Gedatus*, 994 F.3d at 900; *Cindy P. v. Kijakazi*, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, . . . Plaintiff's contention in that regard amounts to an invitation to reweigh the evidence.").

"Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). Here, reading the ALJ's opinion as a whole, the Court can follow the ALJ's reasoning in finding that her mild mental limitations coupled with her physical impairments did not require non-exertional restrictions in the RFC and she stated enough to sufficiently comply with her duty to consider Carol's severe physical and non-severe mental impairments in combination in determining the RFC. Based on the ALJ's citation to the evidence above, the Court finds that the ALJ's determination not to incorporate any restrictions related to her ability to stay on task and maintain attendance in the RFC is supported by substantial evidence.

**B.    Treating Physicians' Opinions**

Carol next challenges the ALJ's weighing of the opinions of her treating rheumatologist, Dr. Weckerle, and pain specialist, Dr. Mayer.   The ALJ's evaluation of the medical opinion evidence was governed by 20 C.F.R. § 404.1520c.   Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).   An ALJ need only articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. *See* 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors, and an ALJ must explain how she considered those factors in her decision. 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2).   An ALJ is not required to explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

On January 13, 2022, Dr. Weckerle completed an Inflammatory Arthritis Report. (R. 800-01).   Dr. Weckerle listed Carol's diagnoses as systemic lupus erythematosus and inflammatory arthritis. *Id.* at 800.   She identified Carol's symptoms as pain in joints especially hands, low back pain with right side lower extremity numbness, extreme fatigue, mental fogginess, photosensitivity, hair loss, diarrhea, and bloating. *Id.*   Dr. Weckerle's objective findings were: reduced range of motion in Carol's waist and hips rendering her unable to bend, joint warmth, joint deformity, joint instability, reduced grip strength, swelling, tenderness, and muscle weakness. *Id.* She noted that Carol was unable to grip due to hand and finger swelling. *Id.*   With respect to fatigue impacting Carol's ability to sustain a full-time job, Dr. Weckerle opined that severe fatigue sometimes rendered Carol unable to work and she was "too sick to work." *Id.*   Dr. Weckerle opined

that Carol's pain, fatigue, or other symptoms were frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks. *Id*. In addition, Dr. Weckerle opined that Carol would need to take unscheduled breaks during an 8-hour work shift and would miss work more than four days per month as a result of her impairments or treatment. *Id*. at 802.

Carol argues that the ALJ failed to provide "compelling" reasons for rejecting Dr. Weckerle's opinions. Focusing on the most important factors of supportability and consistency, the Court disagrees. In the context of addressing Dr. Weckerle's lack of objective support and explanations for her opinions, the ALJ noted that Dr. Weckerle did not identify or discuss any treatment notes supporting her opinion regarding limited abilities in concentration and attention. The ALJ also observed that Dr. Weckerle's opinion in this regard was inconsistent with Carol's attendance at appointments alone with no evidence of concern for her ability to participate in examinations or follow treatment advice. The ALJ pointed out that Dr. Weckerle did not explain her opinions about Carol's need for unscheduled breaks and the level of absences. *Michelle D. v. Kijakazi*, 2022 WL 972280, at *4 (N.D. Ill. March 31, 2022) ("Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion."); 20 C.F.R. § 404.1520c(c)(1). The ALJ explained that Dr. Weckerle did not refer to specific treatment notes to support her opinion that Carol is unable to grip and that restriction lacked support in the record, including in her own treatment notes. (R. 31-32); *Pavlicek v. Saul*, 994 F.3d 777, 782 (7th Cir. 2021) (conflict between treating physician's report and his own treatment notes is an "independent basis for discounting" the opinion); *Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions"). As for consistency, the ALJ acknowledged that the

record reflected mild difficulty unbuttoning and buttoning at the consultative evaluation but also normal grip strength. (R. 32).

Further, the ALJ discounted Dr. Weckerle's opinion that Carol experienced severe fatigue that would sometimes prevent her from working because Dr. Weckerle did not refer to specific treatment notes supporting her fatigue opinion. (R. 32). The ALJ noted that Carol complained of extreme fatigue in July 2021 and Dr. Weckerle adjusted her lupus medications. *Id*. at 32, 580, 583. However, the ALJ found that Carol's description of her symptoms and limitations provided throughout the record did not reflect extreme fatigue complaints and thus, were inconsistent with the severity of the fatigue opined by Dr. Weckerle. *Id*. at 32. The ALJ recognized that the record reflected reported difficulties with fatigue and limited Carol to no operating motor vehicles for work purposes as a safety precaution and also to sedentary work with no more than occasional postural movements that could aggravate fatigue. *Id*. Finally, the ALJ determined that Dr. Weckerle's opinion that Carol was unable to walk due to injury and bone spurs was not persuasive. *Id*. The ALJ reasoned that the objective medical record did not document an inability to walk nor did Carol or her boyfriend report she needed assistance to walk. *Id*; 20 C.F.R. § 404.1520c(c)(2) (consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources.").

Carol objects to the ALJ's analysis of Dr. Weckerle's opinion as improperly finding that Carol's ability to concentrate during appointments suggested an ability to concentrate in a full-time work setting. As an initial matter, Carol cited no caselaw in support of this argument, so it may be deemed forfeited. *Robert S. v. Kijakazi*, 2022 WL 45036, at *9 (N.D. Ill. Jan. 5. 2022). Even if not forfeited, this argument fails. It is true that the ability to "pay attention in the doctor's office and thus in the context of a structured, relatively short mental health examination" is "an

altogether different environment than a full day at a competitive workplace with sustained demands." *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019). However, an ALJ is not prohibited from considering a claimant's ability to concentrate during appointments as one part of her supportability analysis. Contrary to Carol's suggestion, the ALJ did not improperly equate her ability to concentrate at regular medical appointments with an ability to perform full-time work. Rather, the ALJ considered Carol's ability to concentrate during medical appointments as just one among many factors she gave to support her analysis of Carol's ability to sustain attention and concentration. As discussed, regarding Carol's ability to sustain concentration, the ALJ properly noted that mental status exams had shown intact cognition, orientation, thought processes, attention, concentration, and memory. (R. 18, 19). The ALJ further noted that Carol had the capacity for concentration to: do some work until October 29, 2020, ten months after her alleged onset date; drive regularly; handle finances with some limitations but an ability to count change and shop; tend to personal care and do some household cleaning chores; prepare food; go out alone without becoming lost or confused; use a computer to shop on the internet; read and watch television programs, including science shows; feed her cat on a regular schedule; receive, read, compose, and send texts and emails; do some sewing; and participate in the hearing and focus, answer questions appropriately, and provide information. *Id*.

Moreover, the state agency psychological consultants' findings substantially support the ALJ's conclusion regarding Dr. Weckerle's attention and concentration opinion. The psychological consultants reviewed the medical record and found Carol had mild limitations in concentration, persistence, and pace. Despite these limitations, the psychological consultants concluded that Carol retained the ability to perform full-time work with no limitations in maintaining attention and concentration. Again, the ALJ properly found their opinions persuasive

because they were consistent with and supported by the record. Because the ALJ did not rely on Carol's ability to concentrate at appointments as the sole support for rejection of Dr. Weckerle's attention and concentration opinion, the ALJ did not err. Substantial evidence supports the ALJ's finding that Carol's ability to adequately concentrate at appointments was not entirely consistent with Dr. Weckerle's opinion that Carol's symptoms frequently interfered with the attention and concentration needed to perform even simple work tasks.

The Court is similarly unpersuaded by Carol's argument that the ALJ erred in discounting Dr. Weckerle's opinion on unscheduled breaks and excessive absences. Dr. Weckerle merely checked boxes that indicated Carol required unscheduled breaks during an 8-hour working shift and would be absent from work more than four days per month as a result of her impairments or treatment. (R. 801). No supporting explanation was offered by Dr. Weckerle for these breaks and absences opinions. While the ALJ summarized Dr. Weckerle's treatment notes elsewhere in her decision, the ALJ explained that Dr. Weckerle herself did not explain the need for Carol to take unscheduled breaks or the level of absences she assessed. *Id*. at 26-28, 31. Under the regulations, the less explanatory support given by the medical source in the opinion, the less persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1). Although Carol claims that a further explanation was unnecessary because Dr. Weckerle previously identified symptoms of extreme fatigue, mental fogginess, and widespread pain, the ALJ explained that "the objective medical record overall shows [] good functional capacity, including a normal gait and station, full range of motion, full motor strength, and no neurological deficits." (R. 29). Further, Carol's mental status exams showed intact cognition, orientation, thought processes, attention, concentration, and memory. *Id*. at 18, 19. In addition, the ALJ explained how Dr. Weckerle's treatment notes only documented one report of extreme fatigue, addressed with a medication adjustment, which departed from the

overall severe fatigue assessment in her opinion. *Id*. at 32. Thus, the ALJ was entitled to find Dr. Weckerle's opinion the Carol would need unscheduled breaks and more than four absences monthly less persuasive based on the doctor's failure to provide supporting explanations for her check-box findings. *Kinnari A. v. Saul*, 2020 WL 1863291, at *8 (N.D. Ill. Apr. 14, 2020) ("The Seventh Circuit has characterized such check-box form with no supporting narrative as 'weak evidence' when the findings are inconsistent with the medical record.") (citing cases).

Next, Carol finds error in the ALJ's rejection of portions of the opinion offered by Steven Mayer, M.D., her pain specialist, while also considering his statement that her pain did not markedly impact her ability to sustain attention and concentration. Dr. Mayer began seeing Carol in May 2021. (R. 523, 804). His examinations in May and June 2021 reflected: intact gait, negative straight leg raising tests; intact sensation; no difficulty walking on her heels and toes; normal lumbar range of motion without increased pain during motion; and 5/5 muscle strength in the lower extremities. *Id*. at 522, 525. He recommended physical therapy and epidural injections. *Id*. at 625. Dr. Mayer administered a lumbar epidural steroid injection in November 2021. *Id*. 615, 804. In a Pain Report dated January 25, 2022, Dr. Mayer noted Carol's diagnosis of lumbar spinal stenosis. *Id*. at 804. Dr. Mayer stated that Carol experienced chronic low back pain with prolonged sitting and walking. *Id.* He also wrote that Carol's pain was relieved by medication and heat. *Id*. at 805. Dr. Mayer explained that he was in the middle of treating Carol and expected a good prognosis. *Id*. Dr. Mayer concluded: "When I am done treating her[,] she should be able to work." *Id*. Dr. Mayer additionally marked a box confirming that Carol's pain did not "markedly impact upon the ability to sustain concentration and attention, resulting in frequent failure to complete tasks. *Id*.

The ALJ found Dr. Mayer's opinion unpersuasive overall. As to the supportability factor, the ALJ discounted Dr. Mayer's opinion because he did not refer to any specific treatment notes

to support his opinions, provide a function-by-function assessment of limitations Carol might have, and indicate when Carol should be able to work after treatment. (R. 32). However, the ALJ partially credited Dr. Mayer's observation that Carol had some problems with prolonged walking and sitting by limiting her to sedentary work with postural limitations and a sit/stand option. *Id*. The ALJ also found Dr. Mayer's opinion that Carol's pain does not markedly interfere with her sustained attention and concentration consistent with Carol's ability to sustain attention and concentration to attend her appointments alone, handle her finances, and drive. *Id*.

Carol challenges the ALJ's rejection of some of Dr. Mayer's opinion but also consideration of his opinion that Carol's pain does not markedly impact her ability to sustain concentration and attention. But the ALJ was not required to accept or reject Dr. Mayer's opinion wholesale. "The rule in this circuit is that 'an ALJ may choose to adopt only parts of [a medical] opinion . . . .'" *Reyes v. Colvin*, 2015 WL 6164953, at *12 (N.D. Ill. Oct. 20, 2015) (internal citation omitted); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion"). Thus, the ALJ's rejection of Dr. Mayer's opinion on certain matters did not preclude him from considering Dr. Mayer's opinion on other matters, including his observation that Carol's pain did not markedly interfere with sustained attention and concentration.

In crediting the attention and concentration portion of Dr. Mayer's opinion, Carol further argues that the ALJ improperly relied on her ability to perform the sporadic basic life activities of attending appointments alone, handling finances, and driving. According to Carol, the ALJ found her daily activities translated into an ability to work full-time and disregarded limitations in performing her daily activities, such as needing to take breaks, an inability to perform many activities, and having to sleep during the day if she has a neck flare or lupus flare. The ALJ did not err in her consideration of these activities in the supportability evaluation. The Seventh Circuit

has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). "But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). Here, the ALJ did not reason that Carol's attending appointments alone, handling finances, and driving are as demanding as the attention and concentration required to perform full-time work. Rather, the ALJ considered these activities to determine whether Dr. Mayer's attention and concentration opinion was consistent with Carol's statements and testimony. (R. 32). Moreover, the ALJ expressly considered Carol's statements that she takes frequent breaks during food preparation and she does not: do dishes or load/unload the dishwasher; engage in outdoor chores; do a lot of cleaning, laundry, and vacuuming; go to church or belong to any clubs; attend concerts or events; go out to eat; and run, engage in yoga, or golf. *Id*. at 24, 25. Additionally, the ALJ discussed Carol's testimony that a typical month involves about three flares, which last for 2-3 days, and on these days, she stays at home and does not do much activity. *Id*. at 25. However, the ALJ also found reasons to discount the credibility of Carol's claims regarding the intensity, persistence and limiting effects of her symptoms. This indicates that, contrary to Carol's argument, the ALJ did not ignore her testimony about her limitations with breaks and flares and inability to perform certain activities. Accordingly, the Court finds that the ALJ did not err in her consideration of Carol's ability to attend appointments alone, handle her finances, and drive in her consideration of Dr. Mayer's attention and concentration opinion.

## C.     Manipulative Limitations

Carol also argues that the ALJ improperly discounted her difficulty using her hands and should have included an occasional (up to one-third of an eight-hour workday), as opposed to

16

frequent (up to two-thirds of an eight-hour workday), manipulation limitation in the RFC. Carol points out that the vocational expert testified that a restriction to occasional use of the hands for fine and gross manipulation would preclude sedentary unskilled work. (R. 57).

RFC is the "maximum work that someone seeking benefits can sustain doing in light of their impairments." *Poole v. Kijakazi*, 28 F.4th 792, 794 (7th Cir. 2022). In reaching her RFC assessment, the ALJ must "articulate at some minimal level her analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, an ALJ need only include limitations in the RFC that are supported by the medical record. *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021).

The RFC provided, among other things, that Carol can use her hands no more than frequently for fingering (fine manipulation). (R. 24, 32). In reaching this conclusion, she relied on the consultative examination by Dr. Nagireddy on February 13, 2021 showing mild difficulty with unbuttoning and buttoning and normal grip strength and Carol's reported ability to use a cellphone and computer and drive. *Id.* at 27, 29, 32. The ALJ explained that Dr. Nagireddy opined that Carol could handle objects without limitation despite her bilateral hand arthritis. *Id.* at 27, 485. The ALJ also considered Carol's alleged difficulties in the use of her hands and fingers as well as hand pain throughout her decision and adopted the state agency reviewing physicians' opinions that Carol can perform frequent bilateral fingering. *Id.* at 24-25, 28-30. Based on this evidence, the ALJ's conclusion that Carol can frequently use her hands for fingering is supported by substantial evidence. And as discussed above, the ALJ reasonably discounted Dr. Weckerle's opinion that Carol was unable to grip due to hand and finger swelling. *Id.* at 31-32.

Carol claims the ALJ's determination of frequent use of the hands for manipulation is illogical based on the results of an x-ray of the cervical spine on October 31, 2019 and examination

17

findings of Dr. Weckerle on September 14, 2020 and July 26, 2021. However, both state agency physicians' cited Dr. Weckerle's September 2020 results and the state agency physician on reconsideration considered the results of the October 2019 x-ray of the cervical spine. They translated these findings and other evidence into a frequent fingering limitation. (R. 78-79, 91-92). Again, the ALJ agreed with the state agency physicians' finding of frequent fingering with the hands, and Carol does not challenge the weight afforded to the state agency physician opinions. *Id*. at 30. Moreover, Carol does not explain how her report of pain in her joints, especially in her hands, at her July 2021 appointment with Dr. Weckerle undermines the ALJ's determination. The ALJ acknowledged the complaint of pain in Carol's hands at the July 2021 appointment with Dr. Weckerle, but correctly noted that the medical record showed normal range of motion after July 2021 at Carol's annual physical in August 2021 and rheumatology follow-up with Dr. Weckerle in November 2021. *Id*. at 28, 578, 657. For these reasons, the ALJ adequately explained and supported her RFC determination as it relates to Carol's ability to perform frequent fingering.

**D.    Subjective Symptom Assessment**

Finally, Carol criticizes the ALJ's subjective symptom assessment, specifically her conclusion that Carol's statement of her need to lie down or take a nap during the day due to fatigue was not credible because "this is not seen in the objective medical record as a medical necessity that would interfere with the ability to sustain work activity." (R. 29). Citing Dr. Weckerle's finding of severe fatigue, Carol argues that it is "axiomatic that an individual who endures significant fatigue would need to nap, even if daily naps are not 'prescribed.'" Doc. 14 at 12. But Dr. Weckerle did not opine that Carol would need to lie down or nap. A failure to substantiate a claim of needing to lie down or nap during the day with corroborating objective evidence is a valid reason to discount a claimant's statement. *Sherman v. O'Malley*, 2023 WL 8868065, at *3 (7th Cir. 2023) (finding harmless error when ALJ ignored evidence regarding claimant's claim of fatigue

and need to nap throughout the day in part because "the absence of any medical report supporting [claimant's] claim of needing to nap" led to a conclusion that no purpose would be served by a remand); *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019) ("The RFC does not mention that [the claimant] naps for two hours every day, but this requirement is not supported by evidence other than her testimony, which the ALJ did not credit."); *Candice A. Z. v. Kijakazi*, 2021 WL 3187783, at *10 (N.D. Ill. July 28, 2021) (holding ALJ was not required to credit the claimant's alleged need to nap for four hours per day where objective evidence failed to corroborate her claim and only testimony supported the requirement).  Moreover, although Dr Weckerle opined that Carol was "sometimes unable to work at all" due to severe fatigue, the ALJ reasonably explained why she discounted Dr. Weckerle's fatigue opinion.  Specifically, the ALJ correctly observed that Dr. Weckerle's treatment notes did not corroborate that a severe fatigue symptom pervaded the relevant period.  As the ALJ noted, Carol complained of extreme fatigue in July 2021, Dr. Weckerle adjusted her lupus medication, and Carol did not complain of extreme fatigue again.  An extreme level of fatigue appeared to be a one-time complaint to Dr. Weckerle.  Moreover, the ALJ accounted for any fatigue Carol experience by finding that she could not operate a motor vehicle as part of a job.  Nor could she engage in greater than sedentary work with no more than occasional postural movements because greater activity could result in increased fatigue.  Under these circumstances, the ALJ's determination that Carol would not need to lie down or nap during the day was not "patently wrong," as it would have to be for the Court to reverse on this basis. *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal and remand [14] is denied, the Commissioner's motion for summary judgment [19] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated:  January 29, 2024

Sunil R. Harjani
United States Magistrate Judge